UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF ASH EQUIPMENT CO., INC. D/B/A AMERICAN HYDRO; AND ASH EQUIPMENT CO., INC., A MARYLAND CORPORATION;<br><br>Plaintiffs,<br><br>vs.<br><br>MORRIS, INC., A SOUTH DAKOTA CORPORATION;  UNITED FIRE AND CASUALTY COMPANY, AN IOWA CORPORATION; AND  RED WILK CONSTRUCTION, INC., A SOUTH DAKOTA CORPORATION;<br><br>Defendants. | 4:14-CV-04131-LLP<br><br>ORDER ON MOTION TO COMPEL BY DEFENDANT MORRIS, INC.<br><br>DOCKET NO. 66 |

**INTRODUCTION**

This is a Miller Act action (40 U.S.C. § 3133(b)(3)(B)), brought by the United States of America for the use and benefit of Ash Equipment Company, Inc., doing business as American Hydro ("Hydro").  Defendants are Morris, Inc. ("Morris), United Fire and Casualty Company ("UF&CC), and Red Wilk Construction, Inc. (Red Wilk).  Pending before the court is a motion filed by Morris to compel Hydro to provide certain discovery.  See Docket No. 66.  The

presiding district judge, the Honorable Lawrence L. Piersol, referred this motion to this magistrate judge for a decision.  <u>See</u> Docket No. 74.

**FACTS**

Defendant Morris contracted with the United States Army Corps of Engineers ("the Corps") to do work on the Fort Randall Dam spillway at Pickstown, South Dakota.  Morris obtained a Miller Act payment bond on the project from defendant UF&CC in the amount of $7,472,670.25.  The payment bond obligated Morris and UF&CC jointly and severally to guarantee payment to any subcontractor of Morris' who furnished labor and materials on the project as well as to persons who had a direct contractual relationship with Morris on the project.

Part of the project required concrete removal using hydrodemolition methods as required by the Corps in its project plans and specifications.  Morris subcontracted this work to Red Wilk, who in turn subcontracted with Hydro.  Red Wilk promised to pay Hydro for Hydro's work on the project within 10 working days after Morris paid Red Wilk on monthly progress payments.  Hydro brought suit after Red Wilk allegedly failed to pay for certain claims made by Hydro for completed work on the project.  Hydro gave notice to Morris that it had not been paid.  Hydro's first notice to Morris claims amounts unpaid of $520,135.00; its supplemental notice claimed unpaid amounts of $1,168,018.49.  In its complaint, Hydro asserts a breach of contract claim against Red Wilk, an equitable claim in *quantum meruit* against Morris, and claim against the UF&CC bond.

2

Morris served Hydro with certain discovery requests on June 19, 2015. See Docket No. 68-1. Morris then deposed the president and sole owner of Hydro in October, 2015, and asked questions about, *inter alia*, Hydro's calculation of its damages, including why the supplemental claim was approximately double the initial amount claimed. Morris was unsatisfied with the allegedly vague answers given by Hydro's president and the dearth of documents produced. It now seeks an order from the court compelling Hydro to answer Morris' interrogatory number nine. See Docket No. 66. It similarly seeks to compel responses to Morris' requests for production numbers six, ten, eighteen, and twenty-three. Id. Morris represents that this written discovery must be received in order that Morris may take a deposition of Hydro pursuant to Federal Rule of Civil Procedure 30(b)(6). Id.

Hydro resists the motion, arguing that the preferred method for Morris to obtain the information it seeks is (1) to serve Hydro with requests for the production of documents rather than interrogatories and (2) to take Hydro's deposition pursuant to Rule 30(b)(6) instead of seeking the information through interrogatories. Hydro also asserts Morris' discovery requests are vague and that it has already complied with many of the requests.

## DISCUSSION

### A. Meet and Confer Requirement

Before a party may make a motion to compel another party to make discovery or disclosure, the movant must certify that they have in good faith conferred or attempted to confer with the opposing party from whom the

discovery or disclosure is sought in an attempt to resolve the disagreement without court intervention.  See FED. R. CIV. P. 37(a)(1).  Morris alleges that it has complied with this requirement.  Hydro does not dispute that assertion.  Therefore, the court considers the motion on its merits.

### B.     Standards Applicable to Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)     *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.
>
> (C)     *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

4

      (i)      the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

      (ii)     the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

      (iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See FED. R. CIV. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
>     (i)    expressly make the claim; and
>
>     (ii)   describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party. See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

6

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. See FED. R. CIV. P. 26(b)(1). Additionally, the court may limit the frequency and extent of discovery. See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or control." See FED. R. CIV. P. 34(a)(1). The concept of documents in a party's "possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34. See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994). "Because a client has the right, and the ready ability, to obtain copies of

7

documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

Merely because documents gathered by an attorney are subject to the client's control does not, however, automatically mean they are discoverable. The work product doctrine and the attorney-client privilege still apply and may be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213.

### C.     Morris' Discovery Requests

#### 1.     Interrogatory Number Nine

Rule 33(a)(1) of the Rules of Civil Procedure provide that, "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." The district court in this matter established 25 as the limit for interrogatories in this case, consistent with Rule 33. See Docket No. 35 at p.1, ¶ 3. Morris has not sought leave of the court to serve interrogatories in excess of the 25-interrogatory limit.

Morris' interrogatory number nine asks Hydro to "identify all" of a list of 42 categories of documents. See Docket No. 68-1 at pp. 3-4. The command to

"identify all" is not modified or limited by the adjective "damages." Hydro argues that this interrogatory is too numerous because, together with its "discrete subparts," it exceeds the limit of 25 interrogatories allowed under Rule 33(a)(1).

Morris counters that subparts should be counted as "discrete" only when they are unrelated and where, as here, they are "logically or factually subsumed within and necessary related to the primary question," they should not be counted as separate subparts. Morris characterizes the entirety of interrogatory number nine, including its 42 subparts, as all related to seeking "the identification of documents relevant to the manner in which American Hydro is calculating its damages." See Docket No. 76 at p. 4. The court disagrees with this characterization.

The parties accurately state the law on this issue. See Highmark, Inc. v. Northwest Pipe Co., 2012 WL 997007 at ** 1-2 (D.S.D. Mar. 23, 2012) (citing Kendall v. GES Exposition Serv., Inc., 174 F.R.D. 684 (D. Nev. 1997); advisory committee notes for 1993 amendment to Rule 33). The list of documents Hydro is required to identify states at item (pp) "All documents upon which it is intended to rely to establish proof of claims, damages, or refutation of claims." See Docket No. 68-1, interrogatory number 9 at ¶ (pp). This subpart, indeed, deals explicitly with damages. So, also, do subparts (d) (bid estimates), (w) (contracts for furnishing equipment or materials), (aa) (man hour projections), and (hh) (all records of actual costs). Other subparts *may* touch on documents necessary to establish damages, but also appear to include documents not

9

relevant to damages. Still other subparts seemingly have nothing to do with damages.

Generally, the list of 42 subcategories of documents Morris wants Hydro to "identify" fall into the category of "every single piece of data that was generated in connection with this project." The list ranges from diaries, daily reports, and shop drawings to design calculations, progress photos, job meeting minutes, interviews of people connected to the job, and diagrammatic drawings. Id. at pp. 3-4, ¶¶ (a) through (oo). Also requested are documents on the timing, scheduling and sequencing of the project as well as laboratory test reports and financial audits. Id. The unifying theme of the list is not "documents relevant to the calculation of damages," but rather "all documents connected to the project in any way." This is too broad a theme to be considered a single interrogatory.

Morris' discovery request includes a total of 23 numbered interrogatories to Hydro. See docket No. 68-1 at pp. 2-7. Hydro does not object to any of the other subparts of interrogatories in connection with Morris' motion to compel. Because Morris is allowed to serve 25 interrogatories, the court will grant its motion to compel a response to interrogatory number nine, but not as to all its 42 subparts. Instead, the court limits its order to subparts (d), (hh) and (pp). This includes the subparts bearing the most relevance to Morris' inquiry as to damages and also limits Morris' total overall interrogatories to 25.

Hydro suggests that, rather than granting Morris' motion to compel an answer to interrogatory number 9, Morris should obtain the information it

wants via a request for the production of documents or a Rule 30(b)(6) deposition. The court rejects this suggestion. The Rules specifically state that parties may use any discovery device in any sequence they choose. See FED. R. CIV. P. 26(d)(3).

Furthermore, the court notes that parties are required to disclose at the beginning of a case, without first receiving a request from an opposing party, documents relative to the disclosing party's calculation of damages:

> [A] party must, without awaiting a discovery request, provide to the other parties:
>
> * * *
>    (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the document or other evidentiary material . . . on which each computation is based.

See FED. R. CIV. P. 26(a)(1)(iii) (setting forth parties' obligation to provide initial discovery disclosures). If Hydro had complied with this provision, the instant motion to compel would not be before the court.

Nor does the court accept Hydro's suggestion that it has already complied with interrogatory number nine. One of the documents identified in connection therewith is a contract between Hydro and an outside provider dated two years before Hydro entered into its subcontract with Red Wilk. This clearly appears not to be responsive to the discovery request or, if it is, there is a document which provides a link between the document identified and the Red Wilk subcontract and Hydro has not yet provided that link. Either way, Hydro has not fully responded to interrogatory number nine.

Finally, Hydro objects to Morris' use of the phrase "job cost," stating that the phrase means different things to different people and Morris has not provided a definition of the phrase. Hydro intimates that Morris is trying to trick Hydro by using the phrase "job cost" and then having a "gotcha" moment later. Incredibly, the court has read and re-read Interrogatory number nine including all 42 subparts several times. The exact phrase "job cost" appears only once in that discovery request. See Docket No. 68-1 at p. 4, ¶(hh).

First, the court notes that, because of the numerosity issue, the court is ordering Hydro to answer only subparagraphs (d), (hh) and (pp) of interrogatory number nine. The phrase "job cost" appears only in subparagraph (hh). That subpart asks Hydro to identify "[a]ll records of actual costs incurred in connection with the Project, including job cost accounting records, audits, and financial statements." The meaning of the phrase "job cost" appears evident to the court when read in context. If Hydro genuinely believes there is some ambiguity, it may, in its answer, define what "job cost" means to it and then answer subpart (hh). This objection is overruled.

The court grants Morris' motion in part as to interrogatory number nine. Hydro shall provide answers under oath to subparts (d), (hh) and (pp) of this interrogatory.

### 2. Request for Production of Documents Number Six

Morris' request for production of documents number six requests "[a]ll bid documents pertaining to the Project, including but not limited to work sheets, 'take-off' sheets, and project/bid analysis, and including manhour and

cost projections." See Docket No. 68-1 at p. 7.  Hydro states that it has already provided Morris the documents responsive to request number six.  See Docket No. 75 at p. 5.  Morris does not specifically address request number six in its reply on its motion to compel, but states that it is unable to identify which, if any, of the documents Hydro produced are responsive to which requests.

The court notes that Hydro states it provided supplemental documents on March 31, 2016, and April 8, 2016.  See Docket No. 75 at p. 12.  That was *after* Morris filed its motion to compel.

In order to resolve this matter, the court will order Hydro to file a statement, signed under oath by its client, or signed by its attorney as an officer of the court, stating (1) which documents it has produced are responsive to request for documents number six; (2) that it has made a duly diligent search for responsive documents in its possession, custody or control; and (3) that no further documents have been located.  Specifically, Hydro is directed to include in its response whether Hydro searched for the documents and in the places identified by Hydro's president in his deposition as potential documents bearing on Hydro's damages.

### 3. Request for Production of Documents Number Ten

Morris' request for production of documents number ten requests "[a]ny report or analysis produced by any expert or outside consultant for your benefit or otherwise utilized by you or any person pertaining to this Project." See Docket No. 68-1 at p.7.  Hydro objects to this request as the court's scheduling order establishes June 1, 2016, as the deadline for the disclosure of

13

expert reports. See Docket No. 75 at p. 5. Morris does not specifically address request for production number ten in its reply brief on its motion to compel.

The district court's second amended Rule 16 scheduling order sets June 1, 2016, as the deadline for plaintiff Hydro to provide its expert report. See Docket No. 59 at p. 2, ¶ 5. Morris' motion to compel Hydro to provide expert reports in advance of the district court's scheduling order is denied.

### 4. Request for Production of Documents Number Eighteen

Morris' request for production of documents number eighteen requests "[a]ll comparisons, summaries, tabulations, and analyses comparing actual man hours expended on the Project with man hours originally anticipated for such work." See Docket No. 68-1 at p. 8. Hydro states that it has already provided Morris the documents responsive to request number eighteen. See Docket No. 75 at p. 5. Morris does not specifically address request number eighteen in its reply on its motion to compel, but states that it is unable to identify which, if any, of the documents Hydro produced are responsive to which requests.

The court notes that Hydro states it provided supplemental documents on March 31, 2016, and April 8, 2016. See Docket No. 75 at p. 12. That was *after* Morris filed its motion to compel.

In order to resolve this matter, the court will order Hydro to file a statement, signed under oath by its client, or signed by its attorney as an officer of the court, stating (1) which documents it has produced are responsive to request for documents number eighteen; (2) that it has made a duly diligent

14

search for responsive documents in its possession, custody or control; and (3) that no further documents have been located.  Specifically, Hydro is directed to include in its response whether Hydro searched for the documents and in the places identified by Hydro's president in his deposition as potential documents bearing on Hydro's damages.

     **5.**    **Request for Production of Documents Number Twenty-Three**

Morris' request for production of documents number twenty-three requests "[a]ll records referred to in response to the Interrogatories."  See Docket No. 68-1 at p. 8.  Hydro objects to this request as overly vague.  On the contrary, the court finds all twenty-three of Morris' interrogatories to be extremely detailed and specific.  In responding to request for production number twenty-three, all that is required of Hydro is to identify a document produced (presumably by its BATES-stamped number) and then state which interrogatory the document was produced in connection with.  A single document produced by Hydro may be responsive to several of Morris' interrogatories as even the subparts of interrogatory number nine may result in overlapping categories of documents.  The court grants Morris' motion to compel as to request for production of documents number twenty-three.  Hydro must identify discrete documents, or groups of documents, and tell Morris which interrogatory those documents are responsive to.  If no documents answering to a particular interrogatory exist, Hydro must serve Morris with a response saying Hydro has exercised due diligence in looking for documents described in the interrogatory within its possession, custody and control and

that no such documents exist.  Only in that way will Morris be able to discern whether there are remaining categories of documents to be pursued through discovery.

## CONCLUSION

The motion to compel discovery responses filed by defendant Morris (Docket 66) is granted in part and denied in part as follows:

1.      Hydro shall provide an answer under oath in conformity with FED. R. CIV. P. 33 to subparts (d), (hh), and (pp) of interrogatory number nine.

2.      Hydro shall provide a statement in connection with request for production numbers six and eighteen, signed by the Hydro under oath or by Hydro's attorney as an officer of the court stating (1) which documents it has produced are responsive to request for documents number six; (2) that it has made a duly diligent search for responsive documents in its possession, custody and control; and (3) that no further documents have been located. Specifically, Hydro is directed to include in its response whether Hydro searched for the documents and in the places identified by Hydro's president in his deposition as potential documents bearing on Hydro's damages.

3.      Morris' motion to compel a response to request for production number ten is denied.

4.      Morris' motion to compel a response to request for production number twenty-three is granted.  Hydro need not re-produce any documents already produced, but must serve Morris with a written response identifying to which interrogatories documents that have been produced are responsive.  If

no documents are in Hydro's possession, custody or control that answer to a particular interrogatory, Hydro must serve Morris with a response consistent with Fed. R. Civ. P. 34 saying Hydro has exercised due diligence in looking for documents in its possession, custody and control described in the interrogatory and that no such documents exist.

Hydro is ordered to comply with the terms of this order within 21 days from the date of this order. Hydro's responses pursuant to this order shall be deemed timely even though it is outside the discovery deadline. Morris' ability to object to such responses, once received, shall be preserved even though outside the discovery deadline.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED May 24, 2016.          BY THE COURT:

_Veronica L. Duffy_
VERONICA L. DUFFY
United States Magistrate Judge

17