UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF ASH EQUIPMENT CO., INC. D/B/A AMERICAN HYDRO; AND  ASH EQUIPMENT CO., INC., A MARYLAND CORPORATION;<br><br>Plaintiffs,<br><br>vs.<br><br>MORRIS, INC., A SOUTH DAKOTA CORPORATION;  UNITED FIRE AND CASUALTY COMPANY, AN IOWA CORPORATION; AND  RED WILK CONSTRUCTION, INC., A SOUTH DAKOTA CORPORATION;<br><br>Defendants. | 4:14-CV-04131-LLP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL RED WILK CONSTRUCTION, INC.<br><br>DOCKET NO. 78 |

## INTRODUCTION

This is a Miller Act action (40 U.S.C. § 3133(b)(3)(B)), brought by the United States of America for the use and benefit of Ash Equipment Company, Inc., doing business as American Hydro ("Hydro").  Defendants are Morris, Inc. ("Morris), United Fire and Casualty Company ("UF&CC), and Red Wilk Construction, Inc. (Red Wilk).  Pending before the court is a motion filed by Hydro to compel Red Wilk to provide certain discovery.  See Docket No. 78.  The presiding district judge, the Honorable Lawrence L. Piersol, referred this motion to this magistrate judge for a decision.  See Docket No. 86.

## FACTS

Defendant Morris contracted with the United States Army Corps of Engineers ("the Corps") to do work on the Fort Randall Dam spillway at Pickstown, South Dakota.  Morris obtained a Miller Act payment bond on the project from defendant UF&CC in the amount of $7,472,670.25.  The payment bond obligated Morris and UF&CC jointly and severally to guarantee payment to any subcontractor of Morris' who furnished labor and materials on the project as well as to persons who had a direct contractual relationship with Morris on the project.

Part of the project required concrete removal using hydrodemolition methods as required by the Corps in its project plans and specifications. Morris subcontracted this work to Red Wilk, who in turn subcontracted with Hydro.  Red Wilk promised to pay Hydro for Hydro's work on the project within 10 working days after Morris paid Red Wilk on monthly progress payments. Hydro brought suit after Red Wilk allegedly failed to pay for certain claims made by Hydro for completed work on the project.  Hydro gave notice to Morris that it had not been paid.  Hydro's first notice to Morris claims amounts unpaid of $520,135.00; its supplemental notice claimed unpaid amounts of $1,168,018.49.  In its complaint, Hydro asserts a breach of contract claim against Red Wilk, an equitable claim in *quantum meruit* against Morris, and claim against the UF&CC bond.

Hydro served Red Wilk with a number of discovery requests about which disputes arose. See Docket No. 79 at pp. 2-5. The instant motion was filed, which Red Wilk resists.

## DISCUSSION

**A.  Meet and Confer Requirement**

Before a party may make a motion to compel another party to make discovery or disclosure, the movant must certify that they have in good faith conferred or attempted to confer with the opposing party from whom the discovery or disclosure is sought in an attempt to resolve the disagreement without court intervention. See FED. R. CIV. P. 37(a)(1). Hydro alleges that it has complied with this requirement. Red Wilk disputes that assertion.

After reviewing the many letters that passed between counsel and the detailed nature of those letters, the court finds that American Hydro satisfied its duty to confer in good faith with counsel for Red Wilk to try to work out these differences before filing the instant motion. Therefore, the court considers the motion on its merits.

**B.  Standards Applicable to Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed

discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See Fed. R. Civ. P. 26(b)(1). Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify the conditions for the discovery.
>
> (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See Fed. R. Civ. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
>> (i) expressly make the claim; and

4

>   (ii)   describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party. See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ...

encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue

or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or control."  See FED. R. CIV. P. 34(a)(1).  The concept of documents in a party's "possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994).  "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."  American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

Merely because documents gathered by an attorney are subject to the client's control does not, however, automatically mean they are discoverable.  The work product doctrine and the attorney-client privilege still apply and may

be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213.

## C. Hydro's Discovery Requests

| Disputed Discovery Request | Relevancy | Hydro's Initial Position | Red Wilk's Response | Hydro's Reply | Court's Ruling |
|---|---|---|---|---|---|
| Bid Proposals and Worksheets | Red Wilk's Counterclaim Damages | Red Wilk has not produced all responsive documents from when Red Wilk submitted its bid to Morris until the contract was executed | Hydro did not request these documents. It only requested documents from Phase II that Red Wilk relied upon in calculating damages. These documents are from Phase I and Red Wilk did not rely on them in calculating its damages. | Yes Hydro did ask for Phase I documents and for these documents. | Red Wilk must produce the documents. Although the request for documents was initially vague, counsel alerted Red Wilk via letter of its position that bid proposals were covered and had not been produced. |
| Payroll Records and Reports | Red Wilk's counterclaim damages | Red Wilk failed to produce all responsive documents and failed to provide specifics as to details | Red Wilk has produced the documents requested. At least one batch of documents was produced only *after* the instant motion to compel was filed. | Red Wilk produced some documents without telling Hydro that they were related to damages. Other documents were produced only after Hydro filed this motion to compel. | Denied as moot. |

8

| | | | | | |
|---|---|---|---|---|---|
| Wage Dispute Records | | Red Wilk failed to produce except for employee Preston Stands | Red Wilk has produced "some" of these documents. | Red Wilk produced these documents very late in discovery (but before this motion to compel was filed). Hydro seeks additional time to follow up on. discovery. | Denied as moot. The documents have been produced and the district court has extended the discovery deadline to September 15, 2016. |
| Work Schedules | Red Wilk's counterclaim damages; Red Wilk's allegation that Hydro delayed commencing the work | Red Wilk has failed to produce all responsive documents | Red Wilk has produced; The work scheduled referenced by McGinnis in his deposition is the same one that Matt Brazil created. Both are the April 21, 2014, schedule. | Deposition testimony indicates Red Wilk has still not produced internal work schedules that were not provided to the Corps | Red Wilk shall provide a discovery response to Hydro signed under oath attesting that (1) all responsive documents have been provided and (2) the schedule referenced by McGinnis in his deposition is the same as the one already produced. |
| Job Cost Reports | Historic cost accounting and costs determined (Red Wilk's defenses and counterclaim) | Red Wilk has failed to produce all responsive documents | Red Wilk has produced the documents; also, Hydro did not ask for these documents | Hydro did ask for these documents | Unclear whether additional responsive documents exist; Red Wilk shall produce all responsive documents |

| | | | | | |
|---|---|---|---|---|---|
| Concrete Testing | | Red Wilk has failed to produce any concrete testing documents | Red Wilk produced the only documents in its possession that are responsive to this request. Any test results that were attached to emails were lost when McGinnis' computer was destroyed by flood. | Photos which Red Wilk recently produced appear to depict testing | Red Wilk must make a diligent search for documents responsive to this request. If none exist, it must serve Hydro with a statement signed under oath that a diligent search was made and that there are no responsive documents in Red Wilk's possession, custody or control. |
| Damages Spreadsheets | Red Wilk's Counterclaim Damages | Red Wilk has failed to produce all responsive documents | Red Wilk has produced all responsive documents including the one referenced by McGinnis in his deposition. | Red Wilk employee McGinnis testified to creating a separate spreadsheet(s) to calculate damages which calculation predated the deposition. The spreadsheets produced by Red Wilk were created *after* the McGinnis deposition. | Red Wilk must produce the pre-deposition spread-sheet referenced by McGinnis in his deposition. If it has already been given to Hydro, counsel for Red Wilk must identify it by BATES number(s). |

10

| Photographs & Videos | Daily activities, events and conditions on job site (Red Wilk's counterclaim damages) | Red Wilk has failed to produce all responsive documents | Red Wilk has produced. Hydro never indicated the photos had to be in native format. | Red Wilk produced the documents only *after* the instant motion to compel was filed. | Denied as moot. |
|---|---|---|---|---|---|
| Electronically Stored Info | Establish dates and times of events and conditions at job site (Red Wilk's damages) | Red Wilk has failed to produce all responsive documents. | Red Wilk produced. Hydro never indicated electronic documents were to be provided in native format. | Red Wilk produced only *after the instant motion was filed.* The date-created information on the files indicates May 31, 2016, thus indicating Red Wilk did not preserve ESI. Hydro wants the chance to follow up in discovery on this issue. | Denied as moot. The district court has already extended the discovery deadline to September 15, 2016. |
| Privileged Documents | Various | Red Wilk has failed to assert privilege and to provide a privilege log | Red Wilk waived its assertion of privilege and produced the documents | Red Wilk did so only *after* the instant motion to compel was filed. | Denied as moot. |

**CONCLUSION AND ORDER**

Good cause appearing, it is hereby

ORDERED that plaintiff's motion to compel against defendant Red Wilk Construction [Docket No. 78] is denied in part and granted in part as indicated

11

above.  For all documents which Red Wilk is ordered to produce, such production must be delivered to plaintiff no later than 15 days from the date of this opinion.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED July 28, 2016.

BY THE COURT:

*Veronica L. Duffy* (signature)
VERONICA L. DUFFY
United States Magistrate Judge