UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF ASH EQUIPMENT CO., INC. D/B/A AMERICAN HYDRO; AND ASH EQUIPMENT CO., INC., A MARYLAND CORPORATION;<br><br>    Plaintiffs,<br><br>    vs.<br><br>MORRIS, INC., A SOUTH DAKOTA CORPORATION; UNITED FIRE AND CASUALTY COMPANY, AN IOWA CORPORATION; AND RED WILK CONSTRUCTION, INC., A SOUTH DAKOTA CORPORATION;<br><br>    Defendants. | 4:14-CV-04131-LLP<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL MORRIS, INC.<br><br>DOCKET NO. 81 |

**INTRODUCTION**

This is a Miller Act action (40 U.S.C. § 3133(b)(3)(B)), brought by the United States of America for the use and benefit of Ash Equipment Company, Inc., doing business as American Hydro ("Hydro"). Defendants are Morris, Inc. ("Morris), United Fire and Casualty Company ("UF&CC), and Red Wilk Construction, Inc. (Red Wilk). Pending before the court is a motion filed by Hydro to compel Morris to provide certain discovery. See Docket No. 81. The

presiding district judge, the Honorable Lawrence L. Piersol, referred this motion to this magistrate judge for a decision. See Docket No. 87.

## FACTS

Defendant Morris contracted with the United States Army Corps of Engineers ("the Corps") to do work on the Fort Randall Dam spillway at Pickstown, South Dakota. Morris obtained a Miller Act payment bond on the project from defendant UF&CC in the amount of $7,472,670.25. The payment bond obligated Morris and UF&CC jointly and severally to guarantee payment to any subcontractor of Morris' who furnished labor and materials on the project as well as to persons who had a direct contractual relationship with Morris on the project.

Part of the project required concrete removal using hydrodemolition methods as required by the Corps in its project plans and specifications. Morris subcontracted this work to Red Wilk, who in turn subcontracted with Hydro. Red Wilk promised to pay Hydro for Hydro's work on the project within 10 working days after Morris paid Red Wilk on monthly progress payments. Hydro brought suit after Red Wilk allegedly failed to pay for certain claims made by Hydro for completed work on the project. Hydro gave notice to Morris that it had not been paid. Hydro's first notice to Morris claims amounts unpaid of $520,135.00; its supplemental notice claimed unpaid amounts of $1,168,018.49. In its complaint, Hydro asserts a breach of contract claim against Red Wilk, an equitable claim in *quantum meruit* against Morris, and claim against the UF&CC bond.

Morris responded to this lawsuit by filing a crossclaim for indemnity against Red Wilk, asserting that Red Wilk must indemnify Morris for any monies Morris must pay to Hydro. Red Wilk asserted a compulsory counterclaim against Hydro, asserting that the prime contract was part and parcel of the contract between Red Wilk and Hydro. Red Wilk further asserted that Hydro did defective and/or incomplete work pursuant to its contract with Red Wilk.

Hydro served Morris with a number of discovery requests about which disputes arose. See Docket No. 82. The instant motion was filed, which Morris resists in part. See Docket No. 88.

## DISCUSSION

**A.    Meet and Confer Requirement**

Before a party may make a motion to compel another party to make discovery or disclosure, the movant must certify that they have in good faith conferred or attempted to confer with the opposing party from whom the discovery or disclosure is sought in an attempt to resolve the disagreement without court intervention. See FED. R. CIV. P. 37(a)(1). Hydro alleges that it has complied with this requirement. After reviewing the communications between counsel that are of record, the court concludes that Hydro met its obligation. Therefore, the court considers the motion on its merits.

**B.    Standards Applicable to Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1). Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify the conditions for the discovery.
>
> (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See FED. R. CIV. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party. See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and

33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy … encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or

expense of the proposed discovery outweighs its likely benefit."); <u>Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or control." <u>See</u> Fed. R. Civ. P. 34(a)(1).  The concept of documents in a party's "possession" or "custody" is clear enough, but the concept of documents in a party's "control" is not obvious upon a reading of the rule.

The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  <u>See</u> 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, <u>Fed. Practice & Procedure</u>, §2210, at 397 (2d ed. 1994).  "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." <u>American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus</u>, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing <u>Poole ex rel. Elliott v. Textron, Inc.</u>, 192 F.R.D. 494, 501 (D. Md. 2000); and <u>Poppino v. Jones Store Co.</u>, 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

7

Merely because documents gathered by an attorney are subject to the client's control does not, however, automatically mean they are discoverable. The work product doctrine and the attorney-client privilege still apply and may be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213.

**C.     Hydro's Discovery Requests**

    **1.     Jake Russell Photos and Corps Submittals**

After filing the instant motion to compel, Morris provided documents responsive to Hydro's requests for the Jake Russell photos and for the submittals made by Morris to the Corps. Therefore, these two issues are moot.

In its reply, Hydro asks the court to allow further discovery to follow up on the discovery received. This issue is moot as well because the district court recently extended the discovery deadline to September 15, 2016, thus allowing Hydro and the other parties to conduct what remaining discovery is left. The issue of sanctions, if any, is left for another date. The court notes, however, that Hydro itself was the object of a recent successful motion to compel by Morris. See Docket No. 77. This appears to be a case where both parties may be required to bear their own attorney's fees and costs for the discovery disputes that have arisen.

    **2.     Concrete Testing**

Hydro served Morris with request for production numbers 8 and 44, both of which seek documents relative to concrete testing. See Docket No. 84-1 at

8

p. 7; Docket No. 84-2 at p. 2.  Morris objects to producing these documents on the grounds that they are not relevant.

Here, it is necessary to discuss a few more facts of the underlying construction project.  The Corps' project required first the hydrodemolition of the existing spillway at the Fort Randall Dam, and then the construction of a new spillway.  Hydro was hired in connection with the demolition of the old spillway.  Hydro had nothing to do with that part of the contract regarding the construction of the new spillway.  However, Morris as the general contractor was involved in both parts of the project.

Morris has not asserted a counterclaim directly against Hydro, only against Red Wilk for indemnity.  Red Wilk has asserted a counterclaim against Hydro, but in that counterclaim, it never alleges that Hydro caused the concrete in the new spillway to fail or be defective.  Seemingly, then, documents regarding testing of the concrete on the new spillway are irrelevant to the claims, cross-claims and counterclaims asserted by Morris, Red Wilk and Hydro.  That is certainly Morris' position.

Hydro asserts, however, that concrete testing *is* relevant.  Hydro states that at the Rule 30(b)(6) deposition of Red Wilk, Red Wilk's designee testified that a dispute has arisen between Red Wilk and Morris over the concrete testing done on the new spillway (presumably constructed by Red Wilk).  Hydro points out that Red Wilk has asserted a broad counterclaim against Hydro for damages Red Wilk has suffered due to delays on the project.  Hydro posits that if concrete testing is responsible in whole or in part for the delays experienced

9

on the contract, this would be relevant to Red Wilk's counterclaim against Hydro. In essence, Hydro disputes the causation for delays on the project, seeking evidence that something other than Hydro (i.e. concrete testing) has caused or contributed to the delay, which would defeat or reduce Red Wilk's counterclaim damages against Hydro.

This is a somewhat attenuated argument. However, the court is cognizant that it is not familiar with all the details and facts of this construction project like the parties themselves are. Furthermore, the court notes that a parallel discovery dispute was recently filed by Hydro against Red Wilk with one of the contested items being requests by Hydro for concrete testing documents. Red Wilk never asserted that the documents in question were not relevant.

Morris has not asserted that the number of documents or the expense of marshalling them or providing them poses an undue burden. This is significant because discovery is proportional and the less relevant discovery is to the heart of the case, the more the expense or work needed to produce the discovery weighs in the balance. Given the broad scope of discovery under the federal rules, the showing of relevancy Hydro has made, and the absence of a claim of undue burden, the court will grant the discovery.

## CONCLUSION AND ORDER

Good cause appearing, it is hereby

ORDERED that plaintiff's motion to compel against defendant Morris Construction, Inc. [Docket No. 81] is denied in part and granted in part as

indicated above.  Morris must deliver the concrete testing documents to plaintiff no later than 15 days from the date of this opinion.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED July 28, 2016.

BY THE COURT:

*[signature: Veronica L. Duffy]*

VERONICA L. DUFFY
United States Magistrate Judge