FILED

AUG 1 8 2016

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of Ash Equipment Co., Inc., and ASH EQUIPMENT CO., INC., a Maryland corporation, d/b/a American Hydro, | * * * * * * * | CIV 14-4131 |
| Plaintiffs, | * * | |
| vs. | * * * | MEMORANDUM OPINION AND ORDER DENYING MORRIS INC.'S MOTION FOR |
| MORRIS, INC., a South Dakota corporation; UNITED FIRE AND CASUALTY COMPANY, an Iowa corporation; and RED WILK CONSTRUCTION, INC., a South Dakota corporation, | * * * * * * | PARTIAL SUMMARY JUDGMENT |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant Morris, Inc. (Morris), the general contractor on a construction project at the Fort Randall dam, asks for a summary judgment ruling that the indemnity provision of its subcontract with Defendant Red Wilk Construction, Inc. (Red Wilk), entitles it to indemnity for the attorney's fees it is expending in defending this lawsuit brought against it by American Hydro.

## BACKGROUND

The general contractor for the project at the Fort Randall dam is Defendant Morris, a South Dakota corporation with its principal place of business in Pierre, South Dakota. On September 17, 2013, Morris entered into the Prime Contract for the Fort Randall dam project with the United States Army Corps of Engineers (USACE). Morris obtained a Miller Act payment bond on September 18, 2013, from Defendant United Fire and Casualty Co. in the amount of $7,472,670.25 as required by USACE. On October 8, 2013, Morris contracted with Red Wilk to complete certain work, including

the concrete removal using hydrodemolition methods as required by USACE in its project plans and specifications. Red Wilk is a South Dakota corporation with its principal place of business in Huron, South Dakota. The President of Red Wilk, Red Wilk, and Mark Morris, Secretary of Morris, signed the subcontract. The subcontract signed by Wilk and Morris contains an indemnity provision which states that Red Wilk agrees:

> To pay for all materials, skill, labor and instrumentalities used in, or in connection with the performance of this Subcontract when and as bills for claims therefore become due, and to save and protect the Project, the Owner, and the Contractor from all claims and mechanics' liens on account thereof, and to furnish satisfactory evidence to the Contractor when and if required, that he has complied with the above requirements.

(Subcontract § II, Doc. 49-2.)

On April 9, 2014, Red Wilk contracted with American Hydro to provide the labor, equipment and other facilities for concrete removal by hydrodemolition. American Hydro began the concrete hydrodemolition work in May, 2014. American Hydro removed its equipment and labor forces from the work site as of August 25, 2014.

American Hydro filed the summons and complaint in this lawsuit on August 22, 2014, alleging that it has been paid for some but not all of the work it provided. Red Wilk contends that American Hydro failed to perform some work in accordance with the contract specifications and failed to complete other work required by the contract. Red Wilk asserts that any amounts allegedly owed to American Hydro above and beyond what has been paid are completely offset because Red Wilk had to hire others to correct or complete the hydrodemolition work on the project. Both parties seek damages for the other's breach of the contract.

In the Complaint, American Hydro alleges a claim for Quantum Meruit against Morris. Morris brought a cross-claim for indemnification against Red Wilk, asserting that American Hydro's only claims against Morris result from the alleged breach of contract by Red Wilk. (Doc. 9 at p. 7.) On June 3, 2015, Morris' lawyer sent a letter to Red Wilk's attorney formally tendering the defense of American Hydro's claims against Morris to Red Wilk. (Doc. 58-5.) In the pending motion for

summary judgment, Morris acknowledges that liability has not yet been determined in the lawsuit, but requests a ruling that the indemnity provision of its subcontract with Red Wilk requires Red Wilk to pay for Morris' attorneys' fees incurred in defending American Hydro's claims against Morris.

## DISCUSSION

### Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). All facts presented to the district court by the non-moving party are accepted as true if properly supported by the record. *See Beck v. Skon*, 253 F.3d 330, 332-33 (8th Cir. 2001).

### General Rule that Each Party Bears the Cost of Their Own Attorneys

In diversity proceedings, state law governing the provision of attorney's fees is generally considered "substantive" and thus controlling for purposes of the *Erie* doctrine. *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005); *see also Lamb Eng'g & Const. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir. 1997). "South Dakota generally follows the 'American Rule' on attorney's fees, under which each party usually bears the cost of their own attorneys." *Hewitt v. Felderman*, 841 N.W.2d 258, 264 (S.D. 2013). "There are two exceptions to this rule: 'first[,] when a contractual agreement between the parties entitles the prevailing party to attorney

3

fees, and second [,] when an award of attorney fees is authorized by statute.'" *Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson*, 827 N.W.2d 859, 867 (S.D. 2013) (alterations in original). Even if attorney's fees are recoverable, the award of such fees must always be reasonable in light of the services rendered. *Id.*

### Indemnification for Attorney Fees Under the Contract

In its opening brief, Morris argues that it is entitled to attorney fees under the "contractual agreement" exception to the American Rule. Morris admits that the language does not expressly mention attorney's fees. Morris asserts, however, that South Dakota law would permit indemnity for attorney's fees because the parties' intent to include such fees is clearly evident from the language that Red Wilk will "save and protect ... the Contractor from all claims" on account of labor used in the performance of the Subcontract.

When interpreting a contract, the language the parties used in the contract is determinative of their intention. *Poeppel v. Lester*, 827 N.W.2d 580, 584 (S.D. 2013). Unless the parties have indicated a special intention, the contract's words are to be understood in their plain and ordinary sense. *Id.* When the language of a contract provides a plain and unambiguous meaning, construction is not necessary. *All Star Constr. Co. v. Koehn*, 741 N.W.2d 736, 744 (S.D. 2007). When the contract language provides an ambiguous meaning, the rules of construction are required for interpretation. *Id.* "[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.*

Morris cites to a case from the District of South Dakota which held that language used in the subcontract does include attorney's fees even though the words "attorney's fees" were not used in the contract in question.[1] *See Becker v. Central Tel. & Utilites Corp.*, 365 F. Supp. 984, 987 (D.S.D.

---

[1]The indemnification clause at issue in *Becker* contains much broader language than that at issue in this case:

Contractor shall, at its own cost, settle and discharge all claims made by reason of

1973). This Court does not find *Becker* instructive, however, because there was no analysis and no citation to South Dakota law for that proposition. Rather, the *Becker* court cited an Eighth Circuit case, *Peter Kiewit Sons' Co. v. Summit Construction Co.* 422 F.2d 242 (8th Cir. 1969), which does not support either the *Becker* court's ruling on attorney's fees or Morris' request for attorney fees in the instant case.

In *Peter Kiewit*, Summit, the subcontractor, sued the prime contractor, Peter Kiewit, for breach of contract. Summit sought as damages costs and attorney's fees that Summit had to pay its insurance company (General) in connection with the case by reason of an indemnity agreement between Summit and General. The Eighth Circuit affirmed the district court's determination that Summit could not recover from Peter Kiewit the attorney's fees Summit paid under its indemnity agreement with General. The Eighth Circuit explained,

> The fact that the expenses were initially incurred by General rather than by Summit is immaterial since they are expenses incurred in connection with this case. Absent the indemnity agreement General, of course, would have to bear its own expense under the South Dakota law and the statute. The fact then that this expense by contract is imposed upon Summit does not in turn give Summit a right to circumvent the statute and recover such expenses as damages against Kiewit.

*Peter Kiewit*, 422 F.2d at 274. It appears to this Court that the indemnity agreement between Summit and General expressly included attorney's fees. In any event, whether General was entitled to attorney's fees under the indemnity agreement with Summit was not even an issue in the case. Rather, the issue was whether Summit could recover those attorney's fees that it paid to General as an item of damages in its breach of contract action against Peter Kiewit. The Eighth Circuit said it could not. *Peter Kiewit* fails to support the *Becker* court's finding that attorney fees were included under the indemnity contract at issue in that case, and *Becker* and *Peter Kiewit* do not support

---

> the acts or omissions of the Contractor, his agents, employees or sub-contractors and indemnify and save harmless the Owner from loss and damage from claims made on account of work done under the contract.

*Becker*, 365 F. Supp. at 987. This indemnification provision is extremely broad, applying to "all claims made by reason of the acts of omissions of the Contractor" and "loss and damage from claims made on account of work done under the contract."

Morris' argument that South Dakota courts would find the language in its subcontract with Red Wilk includes indemnification for attorney's fees.

Morris also cites *Burlington Northern R.R. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526 (8th Cir. 2000). In that case, a Farmers Union employee fell off a railroad car on Burlington Northern (BN) property leased by Farmers Union. The injured employee sued BN. After settling with the employee, BN sued Farmers Union for indemnification under the lease agreement. Farmers Union had agreed to indemnify and hold BN harmless "for loss, damage, injury or death from any act or omission of" Farmers Union. *Id.* at 530. Relying on North Dakota law allowing attorney fees under language that evidences an intent to encompass a "wide-range of losses," the Eighth Circuit held that the language was "sufficiently comprehensive to support an award of attorney fees" to BN. *Id.* at 534. Unlike North Dakota, this Court is not aware of any South Dakota cases allowing contractual indemnification for attorney's fees where the contract does not explicitly provide for "attorney's fees." Moreover, the indemnification clause in the Morris-Red Wilk subcontract is not as comprehensive as that addressed in *Burlington Northern*. It is similar in that Red Wilk agreed to protect Morris from "all claims." But there is no equivalent to the broad language noted in *Burlington Northern* as promising to compensate for all claims on account of "loss, damage, injury or death from any act or omission of" Farmers Union. Rather, the language is restricted to protecting Morris from all claims on account of bills for "materials, skill, labor and instrumentalities used in, or in connection with the performance of" the subcontract. It is understandable how the broad language to indemnify for "loss" or "damage" "from any act or omission of" Farmers Union could be interpreted to encompass attorney's fees; but attorney's fees are not included in the narrower terms in the Morris-Red Wilk subcontract indemnifying for "all claims and mechanics' liens" on account of bills for "materials, skill, labor and instrumentalities" used to perform the construction project.

Bearing in mind that a promise by a party to a contract to indemnify for attorney's fees is contrary to South Dakota's general rule that parties are responsible for their own attorney's fees, this Court is reluctant to infer Red Wilk's intention to waive the benefit of the rule unless the intention

6

to do so is clear from the language of the agreement.[2] That is not the case. Instead, the language states that Red Wilk will indemnify Morris for claims for bills resulting from labor or materials related to performing the subcontract. Morris has not cited a case indicating that South Dakota courts would interpret the language of the contract more broadly to permit recovery of attorney's fees. The Court concludes that language in the subcontract between Morris and Red Wilk does not provide for indemnity for attorney's fees.

<u>Duty to Defend and Indemnification for Attorney's Fees Under SDCL § 56-3-11</u>

As a matter of contract construction, there is no express obligation for Red Wilk to defend Morris in this lawsuit. In its reply brief, for the first time Morris argues that SDCL § 56-3-11 expressly requires Red Wilk to defend Morris in this lawsuit and to pay the cost of Morris' attorney's fees as they are incurred. That statute provides:

> Unless a contrary intention appears, the person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity; but the person indemnified has the right to conduct such defenses, if he chooses to do so.

SDCL § 56-3-11. There is only one case applying this statute, *see Nite Owl Corp. v. Management Servies, Inc.*, 173 N.W.2d 451 (S.D. 1970), but it is not helpful here because attorney's fees were not an issue in *Nite Owl*.[3] Other jurisdictions have statutes similar to SDCL § 56-3-11, but there is a

---

[2]The parties do not address it, but it appears from the record that Morris prepared the subcontract and the indemnity provision. It is a basic South Dakota rule of contract construction that "[a]mbiguities arising in a contract should be interpreted and construed against the *scrivener*." *Production Credit Ass'n*, 474 N.W.2d 735, 740 (emphasis in the original) (quoting *Forester v. Weber*, 298 N.W.2d 96, 97 (S.D. 1980) (citations omitted)). The reason is that the drafter can more easily prevent mistakes in meaning. *Clements v. Gabriel*, 472 N.W.2d 480, 483 (S.D. 1991). The Court notes this rule not because the indemnity provision is ambiguous, but because Morris could have used language in the subcontract assigning to its subcontractors responsibility for Morris' legal defense and attorney's fees.

[3]In *Nite Owl*, the insured managed accounts of a contractor and maintained a fidelity bond on its employees to protect the contractor. A shortage in a account assigned by the contractor to be managed by the insured was discovered, and the contractor submitted a claim to the fidelity insurer. After the insurer investigated and rejected the claim, the contractor sued the insured management company. The insured tendered the defense of the contractor's action, but the insurer denied liability

dearth of authority interpreting and applying these statutes to non-insurance contractual indemnity provisions. This Court located *Crawford v. Weather Shield Mfg., Inc.*, 187 P.3d 424 (Cal. 2008), and *Specialized Contracting, Inc. v. St. Paul Fire & Marine Ins. Co.*, 825 N.W.2d 872, 875 (N.D. 2012).

In *Crawford*, Crawford and other home buyers sued their subdivision's contractor, J.M. Peters Co. (Peters), claiming construction defects. Peters filed cross-claims for indemnity against its various subcontractors. Peters also requested that the subcontractors defend Peters against the homeowners' claims. Before trial, Peters settled with the homeowners and all subcontractors except Darrow Framing and Weather Shield Manufacturing. Subsequently, the jury determined Weather Shield was not at fault for the defects, but returned an approximately one million dollar verdict against Darrow Framing. The trial judge then conducted a bench trial to determine Darrow's and Weather Shield's liabilities for Peters' cost to defend against the homeowners' lawsuit. The judge held both subcontractors jointly responsible for seventy percent (the portion attributed to the framing and window issues) of Peters' $375,069 defense costs, assessing half of that amount to Darrow and half to Weather Shield. Weather Shield appealed, arguing that it should not have to pay for Peters' defense because the jury found it was not at fault and thus it owed no indemnification to Peters.

The California Supreme Court described the issue on review: "Did a contract under which a subcontractor agreed 'to defend any suit or action' against a developer 'founded upon' any claim 'growing out of the execution of the work' require the subcontractor to provide a defense to a suit against the developer even if the subcontractor was not negligent." 187 P.3d at 429-30. Weather Shield's subcontract included a promise to defend Peters. The California Supreme Court focused on certain language of the subcontract:

> Its relevant terms imposed two distinct obligations on Weather Shield. First, Weather Shield agreed "to indemnify and save [Peters] harmless against all claims for damages to persons or to property and claims for loss, damage and/or theft ... growing out of the execution of [Weather Shield's] work." Second, Weather Shield

---

and refused to defend. The South Dakota Supreme Court held that a judgment against the insured was res judicata in any subsequent garnishment proceeding against the insurer.

made a separate and specific promise "at [its] own expense *to defend any suit or action* brought against [Peters] *founded upon* the claim of such damage ... loss, ... or theft." (Italics added.)

*Crawford*, 187 P.3d at 431. The court then turned to section 2778 of the California Civil Code. Like SDCL § 56-3-11, Cal. Civil Code § 2778(4) provides that, unless a contrary intention appears, "The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so." Cal. Civ. Code § 2778 (4). After concluding that § 2778(4) creates a duty to defend for every indemnitor unless the agreement provides otherwise, 187 P.3d at 431, the *Crawford* court examined the subcontract for evidence of any contrary intent. The court held that Weather Shield's express, specific promise "at [its] own expense to defend any suit or action brought against [Peters] founded upon the claim of such damage, loss or theft", confirmed that the parties intended to bind Weather Shield to the same defense duties that already existed under § 2778. *Id.* The defense was required even if Weather Shield was not negligent. *Id.* at 435.

The subcontract alone provides a basis for the *Crawford* court's holding that Weather Shield had a duty to defend Peters. The present case differs from *Crawford* because the subcontract between Morris and Red Wilk does not contain any defense clause indicating an intent to bind Red Wilk to a duty to defend Morris.

In *Specialized* , the City of Valley City (City) entered into a contract with an engineering firm, Kadrmas, Lee & Jackson, Inc. (KLJ), to be the project engineer for a paving and sewer project. KLJ rejected some concrete work because of cracking and inadequate drainage and required the subcontractor, SCI, to replace the concrete. SCI sued the City for additional compensation. KLJ argued the district court erred in concluding it has a duty to defend the City under the indemnity provision in KLJ's contract with the City, which stated:

9

Indemnification for Professional Services:

[KLJ] agrees to indemnify, save, and hold harmless the [City] from liability, including all costs, expenses, and reasonable attorneys' fees, which may arise out of or result from [KLJ's] negligent acts or omissions in rendering professional services under this agreement. [KLJ] shall not be responsible for an amount disproportionate to [KLJ's] culpability.

*Specialized*, 825 N.W.2d at 875. The North Dakota Supreme Court denied the City's claim for a defense because the parties' agreement called for indemnity for liability only, not a defense. North Dakota has a statute like California's and South Dakota's -- N.D.C.C. § 22-02-07(4) provides for a statutory duty to defend in an indemnity contract unless a contrary intention appears in the agreement. *Id.* at 880. Relying on the statute, the City argued that because the agreement did not specifically state KLJ does not have a duty to defend, it did not contain a contrary intention. The court disagreed and held that the agreement's language limiting the indemnity to "liability that may arise out of or result from KLJ's negligence and only in an amount proportionate to KLJ's culpability," expressed a contrary intent to defend. *Id.* at 880. The court distinguished the agreement from one stating that the indemnitee was "to be saved harmless 'against any and all claim for loss, injury or damage,'" finding a difference between indemnification language for "any and all claims" and for "liability." *Id.* at 881.

Like the agreement in *Specialized*, the agreement between Morris and Red Wilk is silent regarding defense obligations. The agreement differs from that in *Specialized* in that Red Wilk agreed to protect Morris from "all claims" versus "liability," but it does not state that Morris was to be protected from "all claims for loss, injury or damage," and the Court does not place great weight on the use of the words "all claims" versus "liability" in regard to the duty to defend in this case. The indemnity clause in *Specialized* calls for indemnification for negligent acts of KLJ, so it naturally refers to "liability" for negligence, whereas the agreement between Morris and Red Wilk contemplates indemnification if there is money owed for claims made for labor or materials in connection with the performance of the subcontract, so it naturally refers to "claims" rather than "liability" for negligence. Both indemnity clauses contain language limiting what the subcontractor will be responsible to indemnify. The language in *Specialized* limited KLJ to liability for its own

10

negligence. The indemnity language in the present case limits Red Wilk to indemnifying Morris for third party claims for amounts Red Wilk owes others like American Hydro for materials or labor in performance of the subcontract. If SDCL § 56-3-11 is applicable in a case such as this, the Court finds that any statutory duty to defend in SDCL § 56-3-11 does not apply because the indemnity provision expresses a contrary intent. Again, the contrary intention is that Red Wilk will indemnify Morris only for claims for bills resulting from the labor or materials related to performing the subcontract.

In its reply brief, Morris makes an alternative argument that its payment of attorney's fees to defend against American Hydro's claims are actual "losses" that Red Wilk is bound to pay on an ongoing basis by force of SDCL § 56-3-11. Morris relies on in *SurModics, Inc. v. Southern Research Institute*, 940 F.Supp.2d 938 (D.Minn. 2013). There, an agreement between SurModics and Southern Research Institute (SRI) required the indemnifying party to assume the defense of "any and all" loss incurred for every claim for royalties or other payments pursuant to certain Awards Policies under which SurModics was bound to pay the royalties. *Id.* at 941. The agreement defined "loss" as including attorney's fees. *Id.* at 941 n. 2. The court ruled that it was clear from the face of the agreement that SurModics must pay attorney's fees that SRI incurs defending a royalties claim that arose out of SurModics breach if SurModics was found, in other litigation, to have breached the Awards Policies by failing to pay the royalties. *Id.* at 943. In addition, the court ruled that it was also clear SRI must pay the attorney's fees that SurModics incurred in defending the royalties claims, regardless of whether SurModics is later found liable, because SurModics was obligated to make the royalty payments and thus *every* claim for royalties was necessarily a claim that SurModics breached the agreement. *Id.* at 945- 947. The question thus became whether SRI must pay SurModics' attorney's fees on an ongoing basis as they were incurred or could wait until the other litigation was concluded. Because SRI's duty to defend and pay SurModics' attorney's fees was not contingent on whether SurModics breached the Awards Policies by failing to pay royalties, and SurModics had incurred a loss by paying attorney's fees, the court held that SRI had an obligation of ongoing indemnification of SurModics' attorney's fees. *Id.* at 947-48.

11

*Surmodics* is inapplicable in the present case. Unlike in *SurModics*, the indemnity provision in the agreement between Morris and Red Wilk does not mention a duty to defend, and it does not define a loss to include attorney's fees incurred in defending a claim. The reasoning of *SurModics* does not require Red Wilk to pay Morris' attorneys' fees on an ongoing basis in this case under SDCL § 56-3-11.

It appears from Red Wilk's brief that it might agree to indemnify Morris and reimburse Morris for defense costs attributable to those matters for which Morris will be required to pay American Hydro, if Red Wilk is solely responsible for those damages. (Doc. 54 at 10.) Red Wilk cites *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192, 198 n. 9 (8th Cir. 1974). There, the Eighth Circuit discussed a rule allowing an indemnified party to recover attorney's fees and expenses incurred in resisting the indemnified claim:

In the absence of a statute or contract providing for their allowance, attorney fees are not recoverable by the prevailing party. *City of Grandview, Missouri v. Hudson*, 377 F.2d 694, 696 (CA 8 1967). However, an exception to the general rule is that attorneys' fees which have been reasonably incurred in the defense of a claim indemnified against may be recovered where the right to indemnity either arises under a contract or is implied by law, provided that the indemnitor has notice of the lawsuit and an opportunity to defend. *General Electric Company v. Mason & Dixon Lines, Inc.*, 186 F.Supp. 761, 766 (W.D.Va.1960); *McDonough Construction Co. v. H. B. Fowler & Co.*, 281 F.Supp. 90, 95-96 (E.D.La.1968); 5 Corbin, Contracts § 1037 (1964). Such fees are limited, however, to those incurred in the defense of the claim indemnified against, and there should be no recovery for fees and expenses incurred in establishing the right to indemnity.

*Bagby*, 491 F.2d at 198 n. 9. The Court notes that the South Dakota Supreme Court considered this rule but did not adopt or reject it in *Shaffer v. Honeywell*, 249 N.W.2d 251, 259-60 (S.D. 1976). The parties may advise the Court if any further disputes arise between them in the future regarding indemnification. Accordingly,

IT IS ORDERED:

1. That Morris' motion to for partial summary judgment, doc. 45, is denied; and

2. That Red Wilk's Alternative Motion for Rule 56(f) Relief, doc. 55, is denied.

12

Dated this _18_ day of August, 2016.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY:_____
DEPUTY

13